**Frank Ford WALSTON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–888.**

Court of Criminal Appeals of Oklahoma.

July 13, 1979.

Rehearing Denied Aug. 6, 1979.

Arthur S. Bay, Bay, Hamilton, Lees & Spears, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Andrew Wilcoxen, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Frank Ford Walston, hereinafter referred to as defendant, was tried by a jury in the District Court, Oklahoma County, CRF–77–633, and was convicted of Manslaughter in the First Degree in violation of 21 O.S.1971, § 711. The jury as-

sessed his punishment at twenty-five (25) years in the custody of the State Department of Corrections, and from said judgment and sentence the defendant has perfected an appeal to this Court.

The defendant shot and killed Stanley Hall on February 5, 1977. The defendant admitted the shooting and entered a defense of self-defense. Three assignments of error are urged on appeal. The first two pertain to the instructions and the third to the amount of punishment imposed. We will relate only the facts that are necessary to delineate the issues.

On February 5, 1977, at approximately 2:50 a. m., the defendant and Lena Mable Gathron drove together in her automobile to Gene's Motel in Oklahoma City. They rang a buzzer located on a telephone pole and, according to the defendant, after seeing a light go on in the house/office of the manager, Stanley Hall, drove forward to the side of the house. Stanley Hall came out of the house, refused the couple a room and ordered them to leave. The testimony at this point is disputed. Rita Hall, the victim's wife, and the defendant and Mrs. Gathron testified that the victim used some profane language directed at the defendant. Rita Hall testified that the defendant also used profane and derogatory language toward her husband, but the defendant and Mrs. Gathron denied this. The defendant also testified that he had sounded the horn by accident, and Rita Hall stated that the defendant continually sounded the horn. Mrs. Hall also testified that her husband ordered the defendant to leave the premises and that her husband was unhappy because there had been several persons wishing to rent rooms after he had gone to bed. The defendant testified that he was in the process of backing the car out to leave the property when Hall picked up a 25 pound barbell weight from the ground and threatened him with it. Simultaneously, the defendant placed his gun on the door of the car. The defendant testified that the weight was thrown, striking the car just above his head, and at that instant the gun discharged. Stanley Hall died at the scene

as a result of a gunshot wound inflicted by the defendant's gun.

■ In the first and second assignments of error, the defendant argues respectively that the court erred by refusing to give requested instruction number 19 and number 18 on the ground that the failure to so instruct precluded the presentation of his theory of defense. The requested instructions provide as follows:

"You are instructed that the Defendant's theory of the case is as follows: Frank Walston, the Defendant, does not deny that he took the life of Stanley Eugene Hall by firing a weapon. He states, however, that this fatal act was committed by him in his own necessary self-defense and was otherwise justifiable or excusable under the law, as defined by these instructions. In this connection he submits that under the evidence presented he had a lawful right to be where he was in that Gene's Motel is in the business of inviting the general public to enter for temporary lodging at all hours of the day or night, and that his purpose in entering was solely in that context; that he was not previously acquainted with the deceased and harbored no ill will towards him.

"He further submits that the evidence clearly shows that he had a permit to carry a weapon and, inasmuch as he had not yet returned from his place of employment, he was lawfully in possession of the weapon at the time of the incident. He further submits that it was the deceased, rather than himself, who was at all times the aggressor; that he, Frank Walston, acted reasonably under the circumstances in that he attempted to leave the motel and withdraw from close proximity to the deceased prior to the fatal incident, but was prevented from doing so by the active aggression of the deceased. That the aggressive conduct of the deceased in picking up a 25 pound steel disc, running around the vehicle occupied by Frank Walston, and hurling said dangerous instrumentality at him, constituted reasonable and sufficient grounds for Frank Walston to fear that he was about to suffer great bodily harm or even death, thereby justifying his actions in reaching for his security guard gun as an act of necessary self-defense; and that, finally, the actual shooting resulted not from any deliberate and conscious aiming of the weapon or squeezing of the trigger, but rather from a last instant spontaneous reaction to the sight and sound of the hurtling missile as it was thrown at him striking the vehicle doorway inches above his head." (Requested instruction number 19)

"You are instructed that whether or not a 25 pound steel disc may constitute a dangerous weapon or instrumentality will depend upon the use to which it is put. In view of the uncontroverted evidence that the deceased wielded this item as a missile directed at the Defendant, the Court now rules that, as a matter of law, it was a dangerous weapon under the circumstances, and you must so consider it when deliberating the issues of the Defendant's conduct in relation to justifiable or excusable homicide." (Requested instruction number 18)

These instructions contain argument on the facts and place undue emphasis upon facts favorable to the defendant to the prejudice of the State. Such instructions are improper, and the court did not abuse its discretion by refusing to give them. *Wingfield v. State,* 89 Okl.Cr. 45, 205 P.2d 320 (1949).

In addition, the defendant contends in his first assignment of error that the court erred by giving the court's instruction No. 13 on the ground it prejudiced his cause by suggesting he was a trespasser. The court's instruction provided as follows:

"A person who was a trespasser is not entitled to the defense of self-defense if he failed to use a reasonably safe [opportunity] to retreat from the imminent danger of death or great bodily harm.

"A person is a trespasser if that person has refused to leave the land of another after a lawful request to leave."

■ The instruction is a correct statement of the law of this state as it pertains

to a trespasser's right of self-defense, which is the right within reasonable bounds to repeal a dangerous, unlawful attack after the trespasser has vailed himself of every reasonable means of escape. *Thompson v. State*, Okl.Cr., 462 P.2d 299 (1969). And we find the instruction appropriate as a guide for the jury in determining whether the defendant was entitled to the defense of self-defense under the issues raised in this case. Further, we are of the opinion that the court's instruction No. 8[1] and No. 9[2] are adequate and correct statements of the right of self-defense and sufficiently cover the theory of defense advanced by the defendant. It is not necessary that the court instruct the jury in precisely the language requested by the defendant. It is sufficient for the court to instruct the jury on the general principles of law of the case. *Pearson v. State*, Okl.Cr., 556 P.2d 1025 (1976). We therefore find that the first and second assignments of error are without merit.

 The defendant's third assignment of error is that the sentence of 25 years was excessive and should be modified. This Court has repeatedly stated that the question of excessiveness of punishment is to be determined by a study of all the facts and circumstances surrounding each individual case, and this Court does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the Court. *Dodson v. State*, Okl.Cr., 562 P.2d 916 (1977). Title 21 O.S.1971, § 715, provides punishment for manslaughter in the first degree as follows:

"Every person guilty of manslaughter in the first degree is punishable by imprisonment in the penitentiary for not less than four years."

Considering the evidence of the defendant's guilt and the fact that the sentence imposed was well within the statutory limit, we cannot conscientiously say that the sentence assessed shocks the conscience of this Court.

The judgment and sentence is, accordingly, *AFFIRMED*.

BRETT, J., concurs.

CORNISH, P. J., concurs in results.

1. Court's Instruction No. 8:
   "Evidence has been introduced of self-defense as a defense to the charge that he has committed the crime of Manslaughter In The First Degree.
   "A person is justified in using deadly force in self-defense if that person reasonably believed that the use of deadly force was necessary to protect himself from imminent danger of death or great bodily harm. Self-defense is a defense although the danger to life or personal security may not have been real, if a reasonable person, in the circumstances and from the viewpoint of the defendant, would have reasonably believed he was in imminent danger of death or great bodily harm.

"It is the burden of the State to prove beyond a reasonable doubt that the defendant was not acting in self-defense. If you find that the State has failed to sustain that burden, then the defendant must be found not guilty."

2. Court's Instruction No. 9:
   "Self-defense is permitted a person solely because of necessity. Self-defense is not available to a person who was the aggressor or who provoked another with the intent to cause the altercation, no matter how great the danger to personal security becomes during the altercation unless the right of self-defense is reestablished."